ORIGINAL

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2006 APR -3 PM 1: 20

CLERK_____
SO. DIST. OF GA.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

ANDREW PRIESTER,

    Plaintiff,

v.              605CV071

GLEN RICH, Warden, et al.,

    Defendants.

## ORDER

### I. INTRODUCTION

In this Eighth Amendment, prisoner-beating case[1] brought under 42 U.S.C. § 1983, inmate/plaintiff Andrew Priester objects to the Magistrate Judge's (MJ's) Report and Recommendation (R&R) which advised this Court to dismiss without prejudice Priester's case against prison officials because he failed, as required by 42 U.S.C. § 1997e(a), to exhaust his prison's administrative remedies. Under that statute, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted." 42 U.S.C. § 1997e(a) (emphasis added).

But an inmate need only exhaust "available" administrative procedures. Priester argues that he should be excused from the exhaustion requirement because prison officials prevented him from fulfilling it. Doc. # 37. The MJ disbelieves him. Doc. # 35 at 9. Such fact finding violates F.R.Civ.P. 56, plaintiff contends. Doc. # 37 at 16. Two issues -- whether the exhaustion requirement here should be excused, and whether credibility choices can be made on that score -- thus arise here.

### II. BACKGROUND

Priester alleges that Rogers State Prison (RSP) guards abusively beat him four separate times, and he adds that when he attempted to pursue administrative remedies, prison officials denied him access to grievance forms. Doc. # 35 at 2. He claims that this denial continued even after the DOC transferred him to Georgia State Prison (GSP). *Id.*

By way of summary judgment, defendants submitted evidence showing that RSP grievance

---

[1] This is one of a series of prisoner-beating cases emanating from Rogers State Prison in Reidsville, Georgia. *See, e.g., Jamison v. Rich*, 2006 WL 197196 (S.D.Ga. 1/23/06) (unpublished). Plaintiff's counsel represents that there exists a videotape of 80 beatings, 605CV071, doc. # 37 at 2-3, though defendants question this, insisting that despite a court order the tape has not been produced. Doc. # 40 at 1-2.

In any event, the Georgia Department of Corrections (DOC) issued this 8/19/05 press release:

> ATLANTA -- The Department of Corrections announced today that it has completed the internal investigation into allegations of inmate abuse at Rogers State Prison in Reidsville, Georgia. The completed investigation resulted in the termination of two employees. These two are in addition to seven employees terminated at the conclusion of a previous [Georgia Bureau of Investigation] investigation as requested by Corrections' Commissioner James Donald in May of this year. Two employees received disciplinary action short of termination, and two others were returned to duty after being cleared of wrongdoing.

http://www.dcor.state.ga.us/COMMISSIONER/PublicRelations/PressReleases/050819.html (site as of 4/3/06).

forms are routinely availed to inmates like Priester, who simply never filed one. They point out that, once at GSP, he could have pleaded good cause in filing an out-of-time grievance, *see Harper v. Jenkin*, 179 F.3d 1311, 1312 (11th Cir. 1999), but did not. *Id.* at 3; doc. # 4 at 17-18; # 3 at 22-26 (Page Aff.); # 17 at 2.

To support his contention that he should be excused from the administration exhaustion requirement outright, Priester countered (with his own 28 U.S.C. § 1746-compliant declarations) that RSP officials would not provide him with grievance forms. And, after he arrived at GSP, its medical officials insisted that he was delusional and thus prevented him from grieving the RSP abuse. Doc. # 37 at 4; # 14 (attached 7/14/05 Priester Statement).

Priester also tendered the § 1746-compliant statement of ex-RSP corrections officer Tommy Cardell (employed at RSP from 3/02 - 8/05, but placed on leave of absence in 5/03), who described guard-inmate beatings, cover-ups, retaliatory beatings and efforts to deter prisoners from filing grievances. Doc. # 14 Exh. C. As mentioned above, the MJ disbelieves Priester, most notably because he filed an unrelated grievance once at GSP; hence, the MJ found, it is reasonable to conclude that nothing prevented him from filing an RSP grievance from GSP. Doc. # 35 at 9-10.

### III. ANALYSIS

#### A. Exhaustion -- General Standards

A prisoner must comply with his prison's grievance procedures. *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999). He therefore must "provide with his grievance all relevant information reasonably available to him" such as the "identity of any officials he thinks have wronged him and any witnesses." *Brown v. Sikes*, 212 F.3d 1205, 1207-08 (11th Cir. 2000).

An inmate plaintiff obviously cannot provide information that he does not know at the time (*e.g.*, an allegedly liable guard's or supervisor's identity), but he must "provide as much relevant information as he reasonably can" so that officials passing on the grievance can make an informed and reasonable investigation and respond to the grievance. *Id.* at 1207. Thus he need only present the "notice-pleading" level core of his case to administrators. *Hooks v. Rich*, 2006 WL 565909 at * 6 (S.D.Ga. 3/7/06) (unpublished).

Administrative grievance procedures must be exhausted prior to suit. For that matter,

> [e]xhaustion is mandatory, even if the process is futile or inadequate. This mandatory exhaustion requirement applies "irrespective of the forms of relief sought and offered through the administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

*Fripp v. Laird*, 2006 WL 679128 at * 2 (11th Cir. 3/16/06) (unpublished) (cite omitted); *Pri-Har v. Corrections Corp. of America, Inc.*, 154 Fed.Appx. 886, 888-89 (11th Cir. 2005); *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005) (exhaustion requirement applies to inmate's prison-conditions suit even when prisoner seeks relief not available in grievance proceedings, *e.g.* money damages).

Some courts place the burden on the inmate to show that he has satisfied the PLRA's exhaustion requirement. *See, e.g., Jones v. Bock*, 135 Fed.Appx. 837 (6th Cir. 2005) (Dismissal of state prisoner's § 1983 deliberate indifference claim against prisoner officials was warranted, where he failed to show that he

exhausted his administrative remedies, by either attaching the grievance forms to his complaint or describing the remedies he pursued administratively and the outcome), *cert. granted*, 126 S.Ct. 1462 (2006); *but see Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("Exhaustion is an affirmative defense, and the burden of proof is on the defendants").

## B. Excusing Exhaustion

Federal courts

> have only excused inmates from complying with [such] procedures when officials have prevented prisoners from utilizing the procedures, or when officials themselves have failed to comply with the grievance procedures. An inmate's subjective belief that the procedures were not applicable to [particular] grievances does not matter and is not determinative.

*Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (quotes and cites omitted); *Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2005) (Delay in responding to a grievance, particularly a time-sensitive one, may demonstrate that no administrative process is in fact available, for purpose of exhaustion requirement); *Braham v. Clancy*, 425 F.3d 177, 181-82 (2d Cir. 2005); *Rodriguez Ramos v. Smith*, 2005 WL 3054291 at * 5 (E.D.Pa. 11/14/05) (unpublished) (collecting exhaustion-exception cases).

## C. Factfinding

Determining whether prison officials here prevented Priester from grieving his claims is problematic because no party cites authority on whether a judge can engage in factfinding, as the MJ just did, in disbelieving Priester's assertions on that score. There is a good argument for such authority.[2]

---

[2] One argument notes that, since administrative exhaustion goes to this Court's subject matter, F.R.Civ.P. 12(b)(1) applies, and that authorizes a judge to engage in factfinding on this issue:

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981); *id.* at 413 (the "unique power of district courts to make factual findings which are decisive of jurisdiction is, therefore, not disputed"); *Pettit v. State of New Mexico*, 375 F.Supp.2d 1140, 1145 (D.N.M. 2004). Indeed, the court can even inquire into undisputed facts. *S.E.C. v. Mutual Benefits Corp.*, 408 F.3d 737, 742 (11th Cir. 2005). However, the Eleventh Circuit

> has not addressed whether the failure to exhaust [prison remedies] constitutes lack of subject matter jurisdiction (Fed.R.Civ.P. 12(b)(1)) or failure to state a claim upon which relief can be granted (Fed.R.Civ.P. 12(b)(6)). *Chandler v. Crosby*, 379 F.3d 1278, 1286 n. 1 (11th Cir. 2004).

*Fripp*, 2006 WL 679128 at * 2 n. 1. And courts elsewhere have decided that Rule 12(b)(6) controls. *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) ("administrative exhaustion is not a jurisdictional predicate"), *quoted in Leacock v. New York City Health Hosp. Corp.*, 2005 WL 483363 at * 2 (S.D.N.Y. 3/1/05) (unpublished) ("the Court rejects defendants' contention that the amended complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(1)").

Relatedly, two courts have addressed exhaustion-excusal issues on summary judgment, *Braham*, 425 F.3d

3

One idea would be to require Priester to exhaust his claims *now* and direct GSP officials to accept them without hindrance, thus avoiding this issue. That, of course, would involve the presentation of an untimely claim. GSP officials have been authorized to waive timeliness requirements. *See Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005) ("the [GSP] Inmate Grievance Procedure allows the grievance coordinator to waive the time period for filing a grievance if good cause is shown") (quotes and cite omitted).[3]

But the *Johnson* panel has concluded that the failure to exhaust before filing an action can be an irreversible misstep. It essentially imported the procedural default doctrine from habeas law and engrafted it onto PLRA's exhaustion framework. *Johnson*, 418 F.3d at 1156-57 (The PLRA's exhaustion requirement contains a procedural default component which required state prison inmate bringing § 1983 action against prison officials over alleged prison conditions to have timely met the deadlines or the good cause standard of his state's administrative grievance procedures before filing a federal claim, and therefore *barred* his action when he filed his grievance out-of-time and without good cause); *accord Ross v. County of Bernalillo*, 365 F.3d 1181, 1186 (10th Cir.

---

at 181; *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004), but had no need to address whether judges can or should make credibility choices notwithstanding Rule 56's prohibition. So this remains an open issue.

[3] *See also Cole v. Miraflor*, 2006 WL 457817 at * 4 (S.D.N.Y. 2/23/06) (unpublished) ("Although Cole attempted to file a grievance in April 2002, seven years after the alleged incident, after this Court dismissed his previous complaint for failure to exhaust his administrative remedies, it was within the [prison] supervisor's discretion to deny the grievance based on its untimeliness and Plaintiff's failure to offer acceptable mitigating circumstances").

2004) (a prisoner's action of submitting a time-barred grievance is insufficient to satisfy PLRA's exhaustion requirement; thus, regardless of whether a prisoner goes through the formality of submitting a time-barred grievance, he may not successfully argue that he had exhausted his administrative remedies by, in essence, failing to employ them).

Under *Johnson*, then, Priester's failure to exhaust cannot be excused without good cause. *See also Berry v. Kerik*, 366 F.3d 85, 87-88 (2d Cir. 2004) (holding dismissal *with* prejudice appropriate where "administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust").

*Johnson* has been criticized,[4] and figures into

---

[4] A commentator argues:

> First, it imposes a *de facto* 5-day statute of limitations on prisoner civil rights claims, even though under 42 U.S.C. Section 1988, the statute of limitations for civil rights actions is supposed to mirror the state's general personal injury statute of limitations. In Georgia, the relevant statute of limitations should have been two years. Under the Eleventh Circuit's reading of the PLRA, the statute of limitations for prison civil rights suit is 5 days. This disparate treatment of regular civil rights suits vs. prisoner civil rights suit is intolerable, and it is not required or even suggested by the PLRA's text, history, or structure.
>
> Second, the Eleventh Circuit's reading of the PLRA allows potentially different limitations periods in every prison. Federal law, to the extent possible, should be uniform. By allowing each prison to set a different exhaustion deadline, there could potentially be as much disconformity as

an inter-circuit split. *Compare Ngo v. Woodford*, 403 F.3d 620, 622 (9th Cir.) (prisoner's time-barred grievance satisfied exhaustion requirement when prisoner completed highest level of appeal available), *cert. granted*, 126 S.Ct. 647 (2005) *and argued* 3/22/06, *with Tauer v. Werholtz*, 2006 WL 446069 at * 3 (10th Cir. 2/24/06) (unpublished) ("In this circuit, however, a time-barred grievance is not considered exhausted").

For the moment, then, the rule in this circuit is clear from *Johnson*: an inmate must -- prior to filing suit -- exhaust his administrative claims, even if untimely. *Fripp*, 2006 WL 679128 at * 3 ("[T]he fact that a grievance would be untimely does not render the exhaustion process complete. The prisoner still must file the untimely grievance and go through the process in order to exhaust his administrative remedies").[5] He must do that even if to do so would seem futile. *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir.1998) (emphasizing that "the judicially recognized futility and inadequacy exceptions do not survive the new mandatory exhaustion requirement...." and "there is no longer discretion to waive the exhaustion requirement"); *Arko v. Warden USP*

---

there are prisons.

http://federalism.typepad.com/crime_federalism/woodford_v_ngo/index.html (site as of 4/3/06).

[5] Relatedly, "[i]f one claim is unexhausted, the Court may separate that claim out and proceed on only those claims that have been exhausted." *Minton v. Spann*, 2006 WL 680810 at * 4 (N.D.Fla. 3/09/06) (unpublished); *but see Rinard v. Luoma*, 440 F.3d 361, 363 (6th Cir. 2006) ("PLRA requires total exhaustion, and that exhaustion is mandatory, even if proceeding through the administrative system would be futile") (quotes and cite omitted); *Ross*, 365 F.3d at 1189-90 (adopting the total exhaustion requirement which ordinarily requires a district court to dismiss a prisoner's entire complaint without prejudice if it contains any unexhausted claims).

*Atlanta*, 2006 WL 297224 at * 4 (N.D.Ga. 2/7/06) (unpublished).

Thus, where an inmate fails to present even an untimely claim to prison administrators before filing his federal case, it is procedurally defaulted under *Johnson*, 418 F.3d at 1156-57. That means the claim is barred in federal court absent good cause showing why it should be considered. And that, in turn, brings the Court back to the original issue: Whether Priester has good cause to overcome procedural default, *i.e.*, should he be excused from exhaustion? Hence, the Court returns to the issue illuminated *supra* in note 2: Can a judge (as did the MJ here) make credibility determinations on that score?

### 1. *Implied Factfinding Cases*

Without expressly acknowledging whether courts can factfind on exhaustion issues, the Tenth Circuit implicitly upheld factfinding where a judge simply disbelieved an inmate because his own documentation contradicted his representations. *Miller v. Edminsten*, 161 Fed.Appx. 787, 789 (10th Cir. 2006) (State prisoner did not sustain his burden of showing that he had exhausted administrative remedies on Free Exercise Clause claim, where grievance material attached to his complaint clearly refuted allegation to that effect).[6] That court, however, did not reconcile its result with Rule

---

[6] Note that a judge's credibility choices based on paper records are accorded the same deferential standard of review as his credibility choices based on his evaluation of live testimony. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985) (absent clear error, a district court's factfindings cannot be overturned even if they "do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts").

56's factfinding ban.[7]

Neither did the court in *McDonald v. Schuster*, 2006 WL 411062 at * 5 n. 6 (D.Ariz. 2/16/06) (unpublished) ("Even though [a prison grievance coordinator's] declaration states that if Plaintiff had resubmitted his grievance with the informal complaint attached, she 'would have investigated the matter further,' that statement is *inconsistent* with her duty to comply with [a prison regulation], which does not provide any prison official with the authority to investigate untimely informal complaints") (emphasis added).

### 2. *No Factfinding Cases*

In contrast, the court in *Colby v. Sarpy County*, 2006 WL 519396 (D.Neb. 3/1/06) (unpublished), cited Rule 56's factfinding ban when it refused to find facts on this issue and deferred the matter until trial of the entire case. *Id.* at * 4; *see also Smith v. Briley*, 2005 WL 2007230 at * 4 (N.D.Ill. 8/16/05) (unpublished) ("In light of the uncontroverted evidence offered by Smith, the court finds that a genuine issue of material fact exists as to whether Smith exhausted his administrative remedies as required by the PLRA.... Accordingly, the court denies defendants' motion for summary judgment"); *Kendall v. Kittles*, 2004 WL 1752818 at * 5 (S.D.N.Y. 8/4/04) (unpublished) ("However, the core factual dispute as to whether Kendall did or did not have access to grievance forms during the relevant period, and was or was not told by corrections officials that his complaints were nongrievable, remains. Whatever the relative persuasiveness of defendants' affidavit testimony versus plaintiff's affidavit testimony, such credibility determinations are properly for a jury, not for this Court on a motion for summary judgment").

### D. No "Second Layer"

Congress enacted § 1997e(a) of the Prison Litigation Reform Act ("PLRA") to *curtail* inmate litigation, not create an entire new layer of jury trials in the very overburdened court system that PLRA was meant to relieve. To hold that Priester is entitled to a jury trial on this

---

[7] However, the Second Circuit has held that

> [w]hile it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any genuine issues of material fact, without making some assessment of the plaintiff's account.

*Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quotes and cites omitted), cited in CAL. PRAC. GUIDE FED. CIV. PRO. BEFORE TRIAL Ch. 14-F ¶ 14-261 (2006) ("Despite the oft-repeated denials of 'weighing' evidence, in rare cases, courts may reject declarations 'that are so undermined as to be incredible'; *e.g.*, self-serving declarations that are physically impossible or that are both uncorroborated and contradicted by other credible evidence") (cites omitted); *Shabazz v. Pico*, 994 F.Supp. 460, 470-71 (S.D.N.Y. 1998) (While duty of court on motion for summary judgment is to assess facts presented in light most favorable to non-moving party, and not to weigh credibility of parties, when facts alleged are so contradictory that doubt is cast upon their plausibility, court may pierce veil of complaint's factual allegations, dispose of some improbable allegations, and dismiss claim); *Jeffreys v.. Rossi*, 275 F.Supp.2d 463, 477 (S.D.N.Y. 2003) ("[A] party cannot rely upon implausible testimony to create a triable issue of fact"); *Vatansever v. New York City*, 2005 WL 2396904 at * 3 (S.D.N.Y. 9/28/05) (unpublished) ("However, the overwhelming evidence of [detainee plaintiff's] medical records belies his unsupported assertions that the assault occurred, or that it was as brutal as he describes it to be").

preliminary issue would open the floodgates to even more litigation. Were this Court to hold otherwise, how many *convicted criminals* -- in a legal world where civil-case originating perjury prosecutions are at best a rarity -- would *not* then claim that their guards refused to avail them grievance forms or otherwise did something to excuse the exhaustion requirement? How many inmates like Priester, after pointing to the ensuing swearing match, would *not* then demand a jury trial on this *preliminary* issue, and thereby create a *second* litigation layer on top of the "merits" layer?[8]

Given Congress's intent to curtail inmate litigation, coupled with the Eleventh Circuit's policy bent (including its *de facto* shortening of limitations periods, *see supra* note 4), the Court concludes that, irrespective of whether the issue is reached under Rule 12(b)(1), 12(b)(6), or 56, exhaustion constitutes a preliminary issue for which no jury trial right exists, and therefore judges can and should make credibility determinations on exhaustion-excusal issues.

In that regard, the Court rejects the *Colby* court's tactic of folding the issue into the merits of the case, 2006 WL 519396 at * 4, because that would contradict § 1997e(a)'s purpose, which is to *curtail*, not thicken inmate litigation:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (quotes and cite omitted); *see also Spruill v. Gillis*, 372 F.3d 218, 230 (3rd Cir. 2004). Not resolving the preliminary, administrative exhaustion issue, but instead adding it to a jury's burden, obviously confounds § 1997(e)(a)'s purpose.

## IV. CONCLUSION

This Court therefore **OVERRULES** plaintiff Andrew Priester's Objection (doc. # 37) to the R&R and **DENIES** his motion for an extension of time. Doc. # 37. The Court agrees with the MJ's credibility findings and legal conclusions, and therefore **ADOPTS** the R&R (doc. # 35) as its own. The motion of defendants Robert McCloud and R.D. Collins to dismiss, doc. # 3, as converted to summary judgment, doc. # 10, is **GRANTED**, as are the motions of defendants Glenn Rich and Reginald T. Langston (doc. ## 5, 8). Defendants' motion to stay (doc. # 27) is **DENIED** as moot, and plaintiff Andrew Priester's Complaint is **DISMISSED WITHOUT PREJUDICE** for his failure to exhaust administrative remedies.

This 3 day of April, 2006.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[8] This was something poignantly illustrated by the court in *Beltran v. O'Mara*, 405 F.Supp.2d 140 (D.N.H. 2005), which, in generating a lengthy published opinion, expended over ten pages on whether an inmate's federal court allegations were sufficiently grieved through his prison's administrative procedure. *See id.* at 143-56.